CAROL M. THOMPSON,
and THE ESTATE OF DONNA M. FAY,

        Plaintiffs,

                                          Case No. 21-cv-1137-pp

    v.

ROSE M. KNAUP,

        Involuntary Plaintiff,

    v.

ABC INSURANCE COMPANY,
SAVASENIORCARE CONSULTING, LLC,
DEF INSURANCE COMPANY,
SAVASENIORCARE ADMINISTRATIVE SERVICES, LCC,
GHI INSURANCE COMPANY,
XAVIER BECERRA,
UNITED HEALTHCARE OF WISCONSIN, INC.,
and SSC GERMANTOWN OPERATING COMPANY, LCC,

        Defendants.

**ORDER GRANTING DEFENDANTS' MOTION FOR STAY AND TO COMPEL ENFORCEMENT OF DISPUTE RESOLUTION PROGRAM AGREEMENT (DKT. NO. 4), ORDERING PARTIES TO SUBMIT TO DISPUTE RESOLUTION PROCESS DESCRIBED IN DKT. NO. 4-1 AND ADMINISTRATIVELY CLOSING CASE**

On October 1, 2021, the defendants removed this case from Washington County Circuit Court. Dkt. No. 1. The plaintiff sued for negligence and seeks punitive damages. Id. The claims relate to an injury to the plaintiffs' mother, Donna Fay, allegedly caused by the defendants while Ms. Fay was a resident of an assisted living facility owned and operated by the defendants. Id.

1

On October 19, 2021, defendants Savaseniorcare Administrative Services LLC and Savaseniorcare Consulting LLC (the Savaseniorcare defendants) and SSC Germantown Operating Company LLC filed a motion to stay and compel arbitration. Dkt. No. 4. Although they are represented by counsel, the plaintiffs have not responded.[1] The court will grant the motion.

## I. Background

### A. Parties

The plaintiffs allege that Donna Fay was a resident of Virginia Highlands Health and Rehabilitation Center from approximately March 13, 2018 through May 22, 2020, when she passed away at the age of eighty. Dkt. No. 1 at 8. Plaintiff Carol Thompson is the surviving daughter of Donna Fay and was appointed as special administrator of Ms. Fay's estate. Id. at 9. Involuntary plaintiff Rose Knaup is another surviving daughter of Ms. Fay and is joined under Wis. Stat. §803.03(1). Id.

The plaintiffs allege that SSC Germantown Operating Company LLC and the Savaseniorcare defendants are "in the business of managing, owning and/or operating senior living and/or health care services including, but not limited to, skilled nursing facilities, nursing facilities, nursing homes, and/or assisted living facilities." Id. at 9-13. The plaintiffs assert that SSC Germantown provided Ms. Fay services at a nursing home in Germantown,

---

[1] Under Civil Local Rule 7(b) (E.D. Wis.), a non-moving party must file papers in opposition to a motion within twenty-one days of service of that motion. The notice of service indicates that the defendants served the motion on October 19, 2021. Dkt. No. 5. The plaintiffs had until November 9, 2021 to respond.

Wisconsin. Id. at 10. They allege that SSC Germantown is "directly liable for its own negligent acts, as well as the negligent acts of its employees, officers and/or directors . . .." Id. at 10-11. They contend that SSC Germantown is liable for the claims relating to the Savaseniorcare defendants "on the theory of corporate relationship to, control of, direct participant liability and/or successor liability." Id.

The plaintiffs allege that defendants ABC Insurance company, DEF Insurance company and GHI Insurance Company provided insurance coverage to SSC Germantown and the Savaseniorcare defendants. Id. at 11-14. The plaintiffs provided a fictitious name for these insurance companies under Wis. Stat. §807.12, asserting that the identities of the companies are unknown. Id.

The plaintiffs allege that defendant Xavier Becerra "has oversight responsibility for the Health Care Financing Administration" as Secretary of the United States Department of Health and Human Services. Id. at 14. The plaintiffs say that under 42 U.S.C. §1395Y(b)(2), "Medicare may be entitled to reimbursement for related paid claims if [the plaintiffs] recover through settlement or judgment." Id. at 15. They clarify that they are not asserting a claim against the United States or its agencies or employees. Id.

Finally, the plaintiffs allege that UnitedHealthcare of Wisconsin, Inc. "may have paid health claims on behalf of [Ms. Fay] for medical care and services rendered as a result of the incident that is the subject of this case." Id. at 15. They say that UnitedHealthcare "may be entitled to reimbursement for

3

related, paid claims if [the plaintiffs] recover[] through settlement or judgment." Id.

  B. Alleged Facts

The plaintiffs allege that Ms. Fay was admitted to Virginia Highlands Health and Rehabilitation Center for care following a hospitalization. Id. at 16. They say she was admitted on March 13, 2018 with quadriplegia, pneumonia and depressive disorder. Id. at ¶22. The plaintiffs assert that the defendants "had a duty and promised to provide [Ms. Fay] with prompt and adequate individualized treatment, assistance, care, and services including, but not limited to, skilled nursing care, supervision, monitoring, assessment" and other various forms of medical care. Id. at ¶24. They allege that the defendants had a duty to provide health care and other services to the plaintiff "to attain and maintain the highest physical, mental, and psychosocial well-being, level of function and safety for [Ms. Fay]." Id. They say that Ms. Fay had special vulnerabilities due to her quadriplegia and "required supervision, monitoring, and assistance from [the defendants'] staff and was dependent on [the defendants'] assistance for treatment, cares, activities of daily living, health care, and/or related services . . .." Id. at ¶27.

The plaintiffs allege that the defendants failed to properly transfer Ms. Fay using a specialized lift, acting against the current standards of practice and/or the defendants' own policies. Id. at ¶33. They also allege that the defendants failed to provide adequate training for management and staff "regarding their reasonable duty of care to protect residents from harm." Id. at

4

¶36. The plaintiffs say that Ms. Fay fell during a transfer from her bed to her wheelchair performed by the defendants' employees on May 22, 2020. Id. at ¶39.

The plaintiffs allege that following her fall, Ms. Fay was transferred to the hospital where she was evaluated and treated for severe injuries." Id. at ¶41. They say that her injuries "required surgical intervention, and/or extensive treatment for the injuries she suffered," and that the injuries eventually resulted in her death. Id. at ¶43. They assert that Ms. Fay "suffered severe pain suffering, mental anguish, and emotional distress." Id. at ¶44. They assert that Ms. Fay died that same day, May 22, 2020, as a direct result of complications following the fall. Id.

The plaintiffs say that an investigation by the Department of Health and Human Services found that during this incident, the defendants "provided substandard quality of care." Id. at ¶40. The plaintiffs also say that the investigation showed "that the root cause of the fall was the use of an incorrect sling that was not completely hooked into all four of the clips of the lift and did not wait for a second staff member to assist with [Ms. Fay's] transfer per her plan of care." Id.

## II.  Motion to Stay and Compel Arbitration

### A.  Motion

Defendant SSC Germantown and the Savaseniorcare defendants ask the court to stay the action and compel enforcement of the dispute resolution program agreements entered into by the parties under 9 U.S.C. §3. Dkt. No. 4

5

Case 2:21-cv-01137-PP   Filed 04/26/22   Page 5 of 11   Document 7

at ¶1. They assert that "[o]n March 15, 2018, Ms. Fay's daughter, Carol M. Thompson, acting as Ms. Fay's authorized representative/power of attorney, signed and consented to participate in Virginia Highlands's voluntary Dispute Resolution Program." Id. at ¶2. The defendants attached the agreement to their motion as Exhibit A. Dkt. No. 4-1. The agreement is titled, "Agreement for Dispute Resolution Program." Id. at 2.

The defendants argue that the parties agreed to resolve "all disputes that would 'constitute a cause of action that either party could bring in a court of law,' . . . through arbitration." Dkt. No. 4 at ¶4. The defendant cites the portion of the agreement which states,

> THIS AGREEMENT IS SUBECT TO ARBITRATION DISPUTES
>
> BY AGREEING TO HAVE ALL DISAGREEMENTS RESOLVED THROUGH THE DISPUTE RESOLUTION PROGRAM, THE PARTIES AGREE TO WAIVE THE RIGHT TO A JUDGE OR A JURY TRIAL AND TO HAVE THE DISPUTE RESOLVED THROUGH VARIOUS STEPS, CULMINATING IN A DECISION BY AN ARBITRATOR.

Id. at ¶5 (citing dkt. no. 4-1 at 2). They further cite the portion of the agreement which states,

> YOU AGREE THAT YOUR PARTICPATION IN THE DRP WILL BENEFIT AND *BIND* YOUR FAMILY, HEIRS, SUCCESSORS, ASSIGNS, AGENTS, . . . AND/OR YOUR LEGAL REPRESENTATIVES, INCLUDING THE PERSONAL REPRESENTATIVE OR THE EXECUTOR OF YOUR ESTATE . . . .

Id. at ¶6 (citing dkt. no. 4-1 at 3) (emphasis in original). The defendants argue that the agreement specifically defines the term "parties" to include family members with rights to claims in state court on behalf of the resident or her estate. Id. at ¶7. They assert that the agreement states that participation in the

program is voluntary, but that "[b]y signing this agreement, you agree to participate in the Despite [sic] Resolution Program." Id. at ¶9.

The defendants argue that both the claims and the plaintiffs fall squarely within the Agreement. Id. at ¶¶17-19. They further assert that the Federal Arbitration Act (FAA) is controlling law. Id. at ¶¶21-22. They say that under the FAA, an arbitration agreement is "'valid, irrevocable, and enforceable, save upon grounds as exist at law or in equity for the revocation of any contract,'" and that the FAA allows the court to stay any proceedings until arbitration has been completed. Id. at ¶23 (citing 9 U.S.C. §§2-3). The defendants cite Henry Schein, Inc., *et al* v. Archer & White Sales, Inc. ___ U.S. ___, 139 S. Ct. 524 (2019), as legal authority for enforcing the parties' agreement. Id. at ¶24. They argue that permitting the plaintiffs to circumvent the agreement "would be wholly inconsistent with the clear intent of the parties and prevailing applicable legal authority, especially as the parties have not yet engaged in litigation regarding the issues raised in Plaintiff's Complaint." Id. at ¶26 (citing Doctor's Assocs. v. Distajo, 107 F.3d 126, 131 (2nd Cir. 1997)).

B.    Analysis

Under the FAA, "arbitration is a matter of contract, and courts must enforce arbitration contracts according to their terms." Schein, 139 S. Ct. at 529 (citing Rent-A-Center, W., Inc. v. Jackson, 561 U.S. 63, 67 (2010)). The plaintiffs have not challenged the validity of the agreement. The court will enforce the agreement according to its language.

The Agreement for Dispute Resolution Program was signed by Carol Thompson on behalf of Ms. Fay, a facility witness and the facility administrator. Dkt. No. 4-1 at 9. As the defendants have recounted, the agreement specifically states that "BY AGREEING TO HAVE ALL DISAGREEMENTS RESOLVED THROUGH THE DISPUTE RESOLUTION PROGRAM, THE PARTIES AGREE TO WAIVE THE RIGHT TO A JUDGE OR A JURY TRIAL AND TO HAVE THE DISPUTE RESOLVED THROUGH VARIOUS STEPS, CULMINATING IN A DECISION BY AN ARBITRATOR." Id. at 2. The agreement includes a section titled "WHAT ARE MY RIGHTS AND RESPONSIBILITES UNDER THIS AGREEMENT?" Id. at 2. Under this section, Carol Thompson, on behalf of Ms. Fay, agreed that Ms. Fay's participation in the dispute resolution program was voluntary and that "BY SIGNING THIS AGREEMENT, [SHE] AGREE[D] TO PARTICIPATE IN THE DISPUTE RESOLUTION PROGRAM." Id. Following this provision, the agreement states that Ms. Thompson, on behalf of Ms. Fay, "AGREE[D] THAT [HER] PARTICIPATION IN DRP [WOULD] BENEFIT AND BIND [HER] FAMILY, HEIRS, SUCCESSFORS, ASSIGNS, AGENTS, INSURERS, TRUSTEES, AND/OR [HER] LEGAL REPRESENTATIVES, INCLUDING THE PERSONAL REPRESENTATIVE OR EXECUTOR OF [HER] ESTATE . . .. BY AGREEING TO PARTICIPATE ALL DISAGREEMENTS MUST BE RESOLVED THROUGH THE DISPUTE RESOLUTION PROGRAM." Id. at 3. Finally, the agreement includes a provision binding the parties to the dispute resolution program after transfer or discharge from the facility. Id. Based on this language, the court agrees with

8

the defendant that parties to this agreement are bound to submit all legal disputes relating to the Virginia Highlands Health and Rehabilitation Center facility to arbitration.

The agreement defines "Parties" and "Dispute." The agreement defines "Parties" to include,

> (a) the resident, any and all family members who would have a right to bring a claim in state court on behalf of the resident or the resident's estate, a legal representative, including a power of attorney for healthcare and/or financial matters or a court appointed guardian, or any other person whose claim is derived through or on behalf of the resident, including, in addition to those already listed in this definition, any parent, spouse, child, executor, administrator, heir or survivor entitled to bring a wrongful death claim, and (b) the facility, the facility's operator, management company, governing body, any parent or subsidiary of the facility, any company affiliated with the facility, or any of the facility's officers, directors, shareholders, managers, employees, or agents acting in such capacity or any other person that may have a cause of action arising out of or relating in any way to the resident's stay at the facility.

Id. The agreement defines "Dispute" as, "(a) any claim or dispute totaling $50,000.00 individually or in the aggregate that would constitute a cause of action that either party could bring in a court of law . . . ." Id. at 4. The plaintiffs are family members of Ms. Fay and the estate of Ms. Fay. The plaintiffs have brought a negligence claim arising from an incident resulting in death as well as punitive damages for that conduct. Both claims may be brought in a court of law. While the plaintiffs do not specify the amount of damages they seek, it is likely that if the plaintiffs succeeded on this wrongful death-type negligence claim, the damages would be far in excess of $50,000.

9

The plaintiffs are "parties" as defined by the agreement and their claims constitute a "dispute" under the agreement.

The court will compel the plaintiffs to submit their claims to arbitration as they contracted to do in the agreement. The agreement requires the parties to provide the administrator with written notification of the dispute; it provides that if the review committee cannot resolve the dispute, either party may seek mediation. Dkt. No. 4-1 at 4. If the parties cannot reach a satisfactory resolution within sixty days of the request for mediation, either party may request arbitration. Id. at 5. The parties must agree on where the arbitration will take place, and the agreement requires that if they cannot agree on an arbitrator, each party will appoint an arbitrator and the two arbitrators will appoint a third, using the procedures of the National Arbitration Forum or the Judicial Arbitration and Mediation Service. Id. In accordance with 9 U.S.C. §3, the court will administratively close this federal case until arbitration is complete.

### III. Conclusion

The court **GRANTS** the defendants' motion to stay the case and compel enforcement of the dispute resolution program agreement. Dkt. No. 4.

The court **ORDERS** that the parties—including the plaintiffs—must submit to the dispute resolution procedures described in the Agreement for Dispute Resolution Program dated March 2018. Dkt. No. 4-1.

The court **ORDERS** that this case is **ADMINISTRATIVELY CLOSED**. Any party may move to reopen the case if necessary.

Dated in Milwaukee, Wisconsin this 26th day of April, 2022.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**
